IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21–cv–01440–RM–SKC

R.B., a minor, by and through his mother, KRISTIN BLUMENHEIN,

    Plaintiff,

v.

ACADEMY DISTRICT 20,

    Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Magistrate Judge S. Kato Crews**

Before the Court is "Defendant's Fed. R. Civ. P. 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction." (Dkt. 21.) Plaintiff responded in opposition to the Motion, and Defendant replied. (Dkts. 29 and 30.) For the following reasons, it is RECOMMENDED that the Motion be GRANTED, and that this case be DISMISSED.

## STATEMENT OF THE CASE

### I. Plaintiff's Allegations

Plaintiff R.B., a minor, by and through his mother, Kristin Blumenhein ("R.B." or "Plaintiff"), brings this lawsuit against his former school district, Defendant Academy District 20 ("School District" or "Defendant"), asserting that he was denied adequate access to an education, in violation of numerous federal laws. (Dkt. 11.)

As alleged in his Amended Complaint, R.B. is an adolescent who suffers from a myriad of disabilities, including anxiety, depression, attention deficit hyperactivity disorder, adjustment disorder, and resulting learning impairments. (*Id.* at ¶¶ 8-10.) In February of 2018, Plaintiff enrolled at Aspen Valley Middle School ("Aspen Valley"), which is within Defendant's district. (*Id.* at ¶¶ 6-7.) Almost immediately after starting there, R.B. reportedly began to have "numerous behavior issues resulting in suspensions." (*Id.* at ¶ 15; *see id.* at ¶¶ 16-24.) In response to these incidents, Aspen Valley placed R.B. on multiple safety plans, as well as a "504 Plan." (*Id.* at ¶¶ 20-21, 25-26, 28.) However, R.B.'s behavioral issues apparently persisted, and even escalated, notwithstanding these measures. (*Id.* at ¶¶ 27, 30, 33.) Following several more disciplinary incidents in the spring of 2019, R.B. was expelled from Aspen Valley. (*Id.* at ¶¶ 33-46.)

## II. Procedural History

A few months after his expulsion, on September 11, 2019, R.B., through his parents, filed a "Due Process Complaint and Request for Mediation" with the Colorado Office of Administrative Courts. (Mot. Ex. A, Dkt. 21-1.) In that administrative action, R.B.'s parents alleged three claims against the School District arising from their son's treatment at Aspen Valley: (1) the denial of a free appropriate public education, or "FAPE," pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400, *et seq.*; (2) a violation of the IDEA's "child find" requirement; and (3) "predetermination." (*Id.* at 13-15.) As relief, R.B.'s parents

sought, among other things: (1) "[i]nvestigation by the Colorado Department of Education (CDE) regarding whether [R.B.] has been provided FAPE[;]" (2) "[t]he issuance of corrective actions against [Aspen Valley] by the CDE[,]" including "necessary training by an outside professional for [School District] administration in the general areas of IDEA, including Child Find and provision of FAPE[;]" (3) "[r]einstatement of [R.B.]'s good standing at [Aspen Valley] and termination of expulsion[;]" (4) a requirement that Aspen Valley "evaluate [R.B.] for special education services and develop an appropriate IEP [individualized education plan] that adequately meets [R.B.]'s individual needs[;]" (5) a requirement that the School District "provide compensatory education to [R.B.] for the education that was lost due to the District's failure to provide [R.B.] with FAPE[;]" and (6) a requirement that the School District "reimburse [R.B.]'s parents for educational and legal expenses incurred during the time the District denied [R.B.] FAPE." (*Id.* at 15-16.)

On January 8, 2021, the School District sent a settlement offer to the attorney representing R.B. and his parents, proposing a "full and final resolution of all claims that were raised or could have been raised" in the administrative action. (Mot. Ex. B, Dkt. 21-2.) The School District's settlement offer was apparently accepted by R.B.'s parents, in full and "exactly as written," on January 12, 2021. (Mot. Ex. C, Dkt. 21-3.) Two days later, on January 14, 2021, the parties jointly filed a "Stipulation for Dismissal with Prejudice," averring they had "reached a full and fair resolution of all claims that were raised or could have been raised in Case No. EA 2019-0044," and

requesting "the Administrative Law Judge enter an Order dismissing the matter with prejudice." (Mot. Ex. E, Dkt. 21-5.) On January 26, 2021, Administrative Law Judge Keith J. Kirchubel granted the parties' request and dismissed the administrative action with prejudice. (Mot. Ex. D, Dkt. 21-4.)

Roughly four months later, on May 27, 2021, R.B. commenced this federal civil action against the School District—purportedly pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 701, *et seq.*, and the IDEA's implementing regulation, 34 C.F.R. § 300.111—asserting similar allegations and claims for relief. (Dkt. 1; Am. Compl. ¶ 1.) In this lawsuit, R.B. alleges, among other things, that: the School District failed to provide him with reasonable accommodations for his disability while he attended Aspen Valley; it engaged in unlawful "predetermination" with respect to its handling of his "behavioral challenges;" it violated the IDEA's "child find" requirement; and it denied him a "FAPE." (Am. Compl. ¶¶ 1, 52-54, 62-68.) As relief, Plaintiff seeks "an order directing the School District to immediately provide compensatory services to R.B. dating back to no later than October 11, 2019," and "an order that requires the School District to pay for all counseling services, mental health services, therapy, other nonacademic services, and educational [services] until R.B. turns 21 years old." (*Id.* at 12.)

The School District now moves to dismiss this federal civil action, in its entirety, pursuant to Federal Rule of Civil Procedure 12(b)(1). (Dkt. 21.) Defendant

4

contends, specifically, that the court lacks subject matter jurisdiction over Plaintiff's claims, because Plaintiff failed to properly exhaust his administrative remedies under the IDEA prior to commencing this action. (*Id.*)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits. Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Id.* at 909. The dismissal is without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside

the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). If a party challenges the facts upon which subject matter jurisdiction depends, a court may not presume the truthfulness of the complaint's "factual allegations . . . [and it] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.*

## ANALYSIS

### I. Relevant Background Law

The IDEA "is a spending statute that imposes obligations on the states to provide certain [educational] benefits in exchange for federal funds." *Ellenberg v. N.M. Military Inst.*, 478 F.3d 1262, 1274 (10th Cir. 2007); *see* 20 U.S.C. § 1412(a). The main purpose of the IDEA is "to ensure that all children with certain physical or intellectual disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A); *see Sytsema ex rel. Sytsema v. Acad. Sch. Dist. No. 20*, 538 F.3d 1306, 1312 (10th Cir. 2008) (observing that this concept is "the central pillar of the IDEA statutory structure"). As defined by the IDEA, a "free appropriate public education," or FAPE, consists of "special education and related services"—both "instruction" tailored to meet a child's "unique needs" and adequate "supportive services" to allow the child to benefit from that instruction. *Fry v. Napoleon Cmty.*

6

*Schs.*, --- U.S. ---, 137 S. Ct. 743, 748-49 (2017) (citing 20 U.S.C. §§ 1401(9), (26), (29));

*see also Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 203 (1982) (A school district satisfies its obligation to provide a FAPE to a disabled child "by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction."). The IDEA also has a "child find" requirement, which obligates states to "identif[y], locat[e], and evaluat[e]" all children with disabilities who reside within the state. *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 245 (2009) (citing 20 U.S.C. §§ 1412(a)(3)(A), (10)(A)(ii)).

"Under the IDEA, an 'individualized education program,' called an IEP for short, serves as the 'primary vehicle' for providing each child with the promised FAPE." *Fry*, 137 S. Ct. at 749 (citing *Honig v. Doe*, 484 U.S. 305, 311 (1988); 20 U.S.C. § 1414(d)). "The IEP is a written statement that sets forth the child's present performance level, goals and objectives, specific services that will enable the child to meet those goals, and evaluation criteria and procedures to determine whether the child has met the goals." *Ass'n for Cmty. Living in Colo. v. Romer*, 992 F.2d 1040, 1043 (10th Cir. 1993); *see also* 20 U.S.C. § 1414(d)(1)(A) (defining IEP in more detail).

The IDEA "creates a mandatory administrative framework for resolution of disputes over the education of children with disabilities." *Carroll v. Lawton Indep. Sch. Dist. No. 8*, 805 F.3d 1222, 1230 n.4 (10th Cir. 2015); *accord Fry*, 137 S. Ct. at 749 ("Because parents and school representatives sometimes cannot agree on such

issues, the IDEA establishes formal procedures for resolving disputes."). "To begin, a dissatisfied parent may file a complaint as to any matter concerning the provision of a FAPE with the local or state educational agency (as state law provides)." *Fry*, 137 S. Ct. at 749 (citing 20 U.S.C. § 1415(b)(6)). Upon the filing of such a complaint, the parties may then "resolve their differences informally, through a 'preliminary meeting,' or, somewhat more formally, through mediation." *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 137 S. Ct. 988, 994 (2017) (citing 20 U.S.C. §§ 1415(e), (f)(1)(B)(i)) (alteration omitted).

If these measures fail to resolve the parties' dispute, "the matter proceeds to a 'due process hearing' before an impartial hearing officer." *Fry*, 137 S. Ct. at 749 (citing 20 U.S.C. §§ 1415(f)(1)(A), (3)(A)(i)). "Any decision of the officer granting substantive relief must be 'based on a determination of whether the child received a [FAPE].'" *Id.* (quoting 20 U.S.C. § 1415(f)(3)(E)(i)). "If the hearing is initially conducted at the local level, the ruling is appealable to the state agency." *Id.* (citing 20 U.S.C. § 1415(g)). A parent that is unsatisfied with the agency's final determination, may then seek judicial review by filing a civil action in state or federal court. *Id.* (citing 20 U.S.C. § 1415(i)(2)(A)). These administrative procedures must be exhausted before a parent may commence a federal civil action that seeks relief under the IDEA. *Id.* If the IDEA's administrative procedures are not exhausted, the court does not have subject

matter jurisdiction to hear the case.[1] *See, e.g.*, *Cudjoe v. Indep. Sch. Dist. No. 12*, 297 F.3d 1058, 1063 (10th Cir. 2002) (characterizing the IDEA's exhaustion rule as a jurisdictional issue); *Urban v. Jefferson Cnty. Sch. Dist. R-1*, 89 F.3d 720, 725 (10th Cir. 1996) (affirming the dismissal of IDEA claims for lack of jurisdiction based on the failure to exhaust administrative remedies).

"Important as the IDEA is for children with disabilities, it is not the only federal statute protecting their interests." *Fry*, 137 S. Ct. at 749. Notably, Title II of the ADA forbids public entities from discriminating against persons with disabilities. *See* 42 U.S.C. §§ 12131-12132. Section 504 of the Rehabilitation Act likewise protects individuals with disabilities from discrimination in a variety of programs and activities receiving federal financial assistance, including public schools. 29 U.S.C. § 794(a). The federal regulations implementing Section 504 require students with disabilities be given equal access to public schools, and that they receive a FAPE by way of "the provision of regular or special education and related aids and services." 34 C.F.R. § 104.33(b)(1). Section 504 also has a "child find" requirement. 34 C.F.R. § 104.35(a). Similar to the IEP, a "504 plan" is the mechanism for providing a FAPE

---

[1] The Tenth Circuit has recently questioned whether the IDEA's exhaustion requirement is, in fact, a "jurisdictional" concern, though it has thus far declined to revisit the issue. *Muskrat v. Deer Creek Pub. Schs.*, 715 F.3d 775, 783 (10th Cir. 2013); *see, e.g.*, *Carroll v. Lawton Indep. Sch. Dist. No. 8*, 805 F.3d 1222, 1230 n.4 (10th Cir. 2015). Thus, consistent with binding Tenth Circuit precedent, this Court treats IDEA exhaustion as a jurisdictional matter.

under Section 504.[2] *Lauren G. ex rel. Scott G. v. W. Chester Area Sch. Dist.*, 906 F. Supp. 2d 375, 392 (E.D. Pa. 2012); *see* 29 U.S.C. § 794. "A plaintiff may seek relief for the denial of a [FAPE] by filing suit under the ADA or Section 504, in addition to the IDEA." *Douglas Cnty. Sch. Dist. RE-1 v. Douglas Cnty. Health Dep't*, --- F. Supp. 3d ---, 2021 WL 5104674, at *3 (D. Colo. 2021) (citing *Fry*, 137 S. Ct. at 750; 20 U.S.C. § 1415(*l*)); *see also Kimble v. Douglas Cnty. Sch. Dist. RE-1*, 925 F. Supp. 2d 1176, 1181-82 (D. Colo. 2013) (comparing FAPE requirements under the IDEA and Section 504).

The IDEA, by its terms, should not be construed to "restrict or limit the rights, procedures, and remedies available under the Constitution, the [ADA], title V of the Rehabilitation Act [including Section 504], or other Federal laws protecting the rights of children with disabilities[.]" 20 U.S.C. § 1415(*l*). However, § 1415(*l*) makes equally clear that, before a disabled student may file a civil action under any of the above statutes for "relief that is also available" under the IDEA, he must first

_____

[2] "[T]hough IEPs and 504 plans are conceptually similar in that both are designed to provide a [FAPE] to students with a disability, the two plans are held to different standards." *Wimbish v. District of Columbia*, 153 F. Supp. 3d 4, 9 n.3 (D.D.C. 2015) (quoting *K.D. ex rel. J.D. v. Starr*, 55 F. Supp. 3d 782, 785 n.3 (D. Md. 2014)). IEPs are implemented based on "strict criteria in which a school board representative, a teacher, and the student's parents outline the student's current educational performance, set short term performance goals, describe the student's accommodations, and set the evaluation criteria for determining whether the student is making progress." *K.D.*, 55 F. Supp. 3d at 785 n.3 (citing 20 U.S.C. § 1414(d)(1)(A)(i)). 504 plans, by contrast, "are developed through an evaluation process that focuses on providing reasonable accommodations to a student with a disability to allow the student to receive a comparable education to a non-disabled student." *Id.* (citing 34 C.F.R. §§ 104.33, 104.35); *see F. v. MSAD*, No. 2:20-cv-00220-NT, 2021 WL 2188678, at *4 (D. Me. May 21, 2021) ("[A] 504 Plan is more limited in scope that an IEP.").

administratively exhaust his remedies "to the same extent as would be required had the action been brought under [the IDEA]." *Id.*

In addressing the scope of § 1415(*l*)'s exhaustion requirement, the United States Supreme Court has observed that the only "relief" that is "available" under the IDEA is "relief for the denial of a FAPE." *Fry*, 137 S. Ct. at 752-54. Therefore, whether the IDEA's exhaustion requirement applies to non-IDEA claims "hinges on whether [the] lawsuit seeks relief for the denial of a free appropriate public education." *Id.* at 754. If a lawsuit alleges the denial of a FAPE, the plaintiff cannot escape the IDEA's exhaustion requirement merely by asserting his claims under a different statute. *Id.* Conversely, where the remedy sought "is not for the denial of a FAPE, then exhaustion of the IDEA's procedures is not required." *Id.*

In evaluating whether a lawsuit "seeks relief for the denial of a FAPE," the court must "look to the substance, or gravamen, of the plaintiff's complaint." *Id.* at 752. In doing so, the court is obligated to "consider substance, not surface." *Id.* at 755. "The use (or non-use) of particular labels and terms is not what matters[;]" the inquiry "does not ride on whether a complaint includes" certain "magic words," such as "FAPE" or "IEP." *Id.* Rather, the overarching question is whether "the gravamen of a complaint seeks redress for a school's failure to provide a FAPE, even if not phrased or framed in precisely that way." *Id.* "In addressing whether a complaint fits that description," the court must consider "the diverse means and ends of the statutes covering persons with disabilities"—*i.e.,* the IDEA, which protects only minors and

11

"concerns only their schooling," and the ADA and Section 504, both of which "cover people with disabilities of all ages, and do so both inside and outside of schools." *Id.* at 755-56. A court should then ask itself the following hypothetical questions:

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library? And second, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance?

*Id.* at 756 (alterations in original). If the court answers both of those questions in the affirmative, the claim is not rooted in the denial of a FAPE, and the exhaustion of the IDEA's administrative remedies is not required. *Id.* If, on the other hand, the court answers "no" to both questions, "then the complaint probably does concern a FAPE, even if it does not explicitly say so[.]" *Id.*

Finally, in addition to looking at the complaint, "[a] further sign that the gravamen of a suit is the denial of a FAPE can emerge from the history of the proceedings." *Id.* at 757. Specifically, "a court may consider that a plaintiff has previously invoked the IDEA's formal procedures to handle the dispute—thus starting to exhaust the Act's remedies before switching midstream." *Id.*

**II. Whether the Amended Complaint Alleges a Denial of FAPE**

Turning to the case at hand, the Amended Complaint here asserts two claims for relief. (Am. Compl. ¶¶ 47-63.) In his first cause of action, Plaintiff alleges that Defendant violated Section 504, by discriminating against him "solely on the basis of his disabilities," and by failing to provide him with "reasonable accommodations that

12

allowed him access to an education." (*Id.* at ¶¶ 52-55.) The allegations supporting this claim are directed entirely at purported deficiencies in Plaintiff's 504 Plan. (*Id.*) In his second cause of action, R.B. alleges the School District engaged in unlawful predetermination by failing to "seriously evaluate him for special education or develop any sort of behavior intervention plan," including an IEP, and by attempting to expel him before addressing "whether [his] behaviors were a manifestation of his disability." (*Id.* at ¶¶ 62-63.)

Based on the substance of these allegations, it is clear the gravamen of this lawsuit is the denial of a FAPE. No allegation within the Amended Complaint concerns facts unrelated to the adequacy of Plaintiff's special education services. At core, R.B. simply alleges that his school's administrators failed to provide him with appropriate behavioral guidance, *i.e.*, tailored instruction regarding how to conduct himself while at school. *See Gallegos v. Adams Cnty. Sch. Dist. 14*, No. 17-cv-00306-CMA-NYW, 2017 WL 4236320, at *11 (D. Colo. Sept. 25, 2017) (finding the gravamen of a complaint to be the denial of a FAPE, where the claims were based on purported deficiencies in a student's 504 plan); *Johnson v. Sikes*, CV 4:18-216, 2020 WL 3259538, at *12 (S.D. Ga. June 16, 2020) ("The allegations that the School District failed to properly implement a Section 504 plan and an IEP are in essence claims alleging the denial of a FAPE."); *see also Hayes ex rel. Hayes v. Unified Sch. Dist. No. 377*, 877 F.2d 809, 813 (10th Cir. 1989) (observing the "close relationship between the use of discipline and in-class instruction in providing a child" with a FAPE, and

concluding that because "[p]roper conduct and education are inextricably intertwined," the "discipline of a child in the classroom" falls within the scope of the IDEA); *S.D. ex rel. A.D. v. Haddon Heights Bd. of Educ.*, 722 F. App'x 119, 126 (3rd Cir. 2018) ("The substance of Appellants' grievance is that Appellee failed to provide instruction tailored to meet S.D.'s special needs resulting from his disability. Their claims therefore concern the denial of a FAPE."). If R.B. were to file this exact lawsuit against another place of public accommodation, such as a library or theater, the claims would make no sense. Nor would R.B.'s claims be successful had they been brought against the School District by a disabled adult teacher at Aspen Valley.

Plaintiff insists that his claims "do not raise a denial of FAPE," characterizing his operative pleading as, instead, alleging the denial of his "equal access to Defendant's education program by reason of his disability." (Resp. 5.) This is a semantic distinction without a practical difference. It is true that, broadly speaking, Plaintiff's allegations "focus on Defendant's failure to provide Plaintiff with reasonable accommodations that would ensure him equal access to the school." (*Id.* (citing Am. Compl. ¶¶ 44-46).) However, framed more precisely, the allegations are that Plaintiff was denied adequate behavioral guidance, or instruction, to meet his special educational needs, *i.e.*, the denial of a FAPE. *See Fry*, 137 S. Ct. at 756-57 (comparing two hypothetical cases—one in which a wheelchair bound student sues his school for discrimination based on the building's lack of access ramps, and another where a student with a learning disability sues his school for failing to provide

remedial math tutoring—and concluding that the second example, though not the first, would fall within the scope of the IDEA's exhaustion requirement).

Accordingly, because the gravamen of Plaintiff's operative pleading alleges a denial of FAPE, his claims fall within the ambit of the IDEA. Therefore, exhaustion under the IDEA is required.

## III. Whether Plaintiff Exhausted his Administrative Remedies

As discussed *supra*, to satisfy the IDEA's exhaustion requirements, a plaintiff seeking to bring IDEA claims must file an administrative complaint with local school officials, attend a preliminary meeting, proceed to a due process hearing (or mediation), and then appeal the disposition of the hearing, if it is unsatisfactory. *See A.F. ex rel Christine B. v. Espanola Pub. Sch.*, 801 F.3d 1245, 1246 (10th Cir. 2015) (outlining the process); *accord Fry*, 137 S. Ct. at 749. If, after the appeal process, the plaintiff still remains "aggrieved by the findings and decision made," he may then file suit under the IDEA in federal court.[3] 20 U.S.C. § 1415(i)(2)(A). Where, as here, a civil action "seek[s] relief that is also available under" the IDEA, § 1415(*l*) requires the plaintiff exhaust the administrative procedures "under subsections (f) and (g) . . . to the same extent as would be required had the action been brought under the [IDEA]." 20 U.S.C. § 1415(*l*). Subsection (f) sets forth the requirements for impartial

---

[3] Alternatively, if the state entirely fails to provide an appeals process, a party who is "aggrieved by the findings and decision" of the impartial due process hearing may also proceed to court. *Christine B.*, 801 F.3d at 1246-47 (citing 20 U.S.C. § 1415(i)(2)(A)).

due process hearings; subsection (g), which governs state administrative appeals, does not apply here.

R.B. was therefore obligated under § 1415(*l*) to exhaust the procedures set forth in subsection (f) to the same extent required by subsection (i), which by its plain language, permits appeals only from "the findings and decisions" resulting from a due process hearing. 20 U.S.C. § 1415(i)(2). In other words, to comply with the IDEA's exhaustion provisions, R.B. must show that he completed a due process hearing. *Christine B.*, 801 F.3d at 1247-48. The settlement or dismissal of administrative claims before a hearing decision has been rendered does not suffice. *See id.* at 1248 (holding the settlement of an IDEA claim after mediation did not constitute administrative exhaustion of IDEA and related claims); *Albright ex rel. Doe v. Mountain Home Sch. Dist.*, 926 F.3d 942, 952 (8th Cir. 2019) (same); *see also Perez v. Sturgis Pub. Sch.*, 3 F.4th 236, 242 (6th Cir. 2021) ("[I]f an administrative officer has conducted no hearings, made no findings, and issued no decisions, there is nothing to be aggrieved by.").

In this case, the record shows that while Plaintiff did begin the administrative exhaustion process, he did not finish it. Indeed, R.B. settled his administrative claims with the School District, in full, before a due process hearing was even held. (Doc. Nos. 21-3, 21-4, 21-5.) Therefore, because there was no administrative hearing or findings of fact issued, and because the order dismissing Plaintiff's administrative claims makes no mention of his right to pursue such claims in state or federal court,

Plaintiff is not an aggrieved party under the statute. For that reason, he has not exhausted the IDEA's administrative remedies.

Plaintiff argues, nevertheless, that his failure to exhaust the IDEA's administrative remedies should be excused because the settlement of his administrative claims rendered further exhaustion futile. (Resp. 7-9.) The Tenth Circuit has recognized the IDEA's exhaustion requirement is "subject to a traditional futility exception." *Christine B.*, 801 F.3d at 1249 (citing *Honig*, 484 U.S. at 327); *see also Urban*, 89 F.3d at 724 (stating exhaustion is not required "when administrative remedies would be futile, when they would fail to provide relief, or when an agency has adopted a policy or pursued a practice of general[] applicability that is contrary to the law") (internal quotation marks and citation omitted). "Administrative remedies are generally inadequate or futile where plaintiffs allege structural or systemic failure and seek systemwide reforms." *Ellenberg*, 478 F.3d at 1276 (quoting *Romer*, 992 F.2d at 1044).

In arguing that exhaustion would have been futile here, Plaintiff relies on a Tenth Circuit decision, *Muskrat ex rel. J.M. v. Deer Creek Public Schools*, 715 F.3d 775 (10th Cir. 2013). (Resp. 7.) There, the parents of a disabled child filed suit under various federal statutes seeking damages for "continuing medical consequences" relating to the school district's alleged abuse of a "timeout room." *Muskrat*, 715 F.3d at 785. The court in *Muskrat* determined that the IDEA's exhaustion requirement applied to the parents' non-IDEA claims, though it ultimately found that the parents,

17

through an agreement with the school, had obtained all the relief IDEA could possibly provide. *Id.* at 785-86. Given that "no more relief could possibly be won under the statute," the Tenth Circuit reasoned that requiring the parents "to walk through the remaining IDEA administrative processes" would be futile. *Christine B.*, 801 F.3d at 1249 (discussing *id.* at 786).

In his Response, Plaintiff urges this court to find that the futility exception applies here, because "[j]ust like" in *Muskrat*, the parties "reached a resolution of Plaintiff's IDEA claims that provided Plaintiff with the relief requested prior to a hearing." (Resp. 7.) Plaintiff argues that, because "there was nothing left for an administrative court to give him," any requirement that he complete an administrative hearing before filing this lawsuit "would be a futile exercise and waste of resources." (*Id.* at 7-8.) In making that argument, Plaintiff attempts to distinguish the unspecified "relief" that he requested and obtained at the administrative level, with the monetary damages he now seeks in this civil action. (*Id.* at 7-8 & n.2.)

The Tenth Circuit has made clear "the IDEA's exhaustion requirement will not be excused simply because a plaintiff requests damages, which are ordinarily unavailable in administrative hearings held pursuant to the statute, if [the] alleged injuries could be redressed under the IDEA." *Cudjoe*, 297 F.3d at 1066-67 (citations omitted); *see also Dorsey v. Pueblo Sch. Dist. 60,* 140 F. Supp. 3d 1102, 1113 (D. Colo. 2015) (rejecting a plaintiff's argument that, because she only sought money damages, exhaustion under the IDEA was not required). "The question is whether the IDEA

administrative process can redress the alleged problems in any degree, regardless of whether it is the redress the plaintiff seeks." *Muskrat*, 715 F.3d at 785 (citing *Cudjoe*, 297 F.3d at 1066). What matters is the "source and nature of the alleged injuries for which [the plaintiff] seeks a remedy, not the specific remedy itself." *Padilla ex rel. Padilla v. Sch. Dist. No. 1 in City & Cnty. of Denver, Colo.*, 233 F.3d 1268, 1274 (10th Cir. 2000) (citing *Hayes*, 877 F.2d at 812).

On this issue, the court does not find Plaintiff's arguments regarding futility to be persuasive. To the extent Plaintiff relies on *Muskrat* as support, the facts of that case are readily distinguishable from the case at hand. Specifically, in *Muskrat*, which addressed futility at the summary judgment stage, the plaintiffs provided the court with evidence showing the *specific* relief they requested and obtained at the administrative level. *Id.*, 715 F.3d at 786 (discussing the evidence). By contrast, in this case, Plaintiff fails to identify or describe, even broadly, the relief he obtained at the administrative level. Nor does R.B. provide any meaningful explanation as to how that relief differs from the relief now sought. Rather, Plaintiff merely states, in a conclusory fashion, that he has "already received all the relief he requested on his corresponding IDEA claims," and that his present lawsuit "clearly seeks damages for the Defendant's violations of Section 504." (Resp. 7-8.) Without additional facts concerning the relief R.B. obtained through the settlement of his administrative claims, the Court cannot say whether, as Plaintiff now alleges, "there was nothing

19

left for an administrative court to give him." (*Id.* at 8.) Thus, Plaintiff has not shown administrative exhaustion of his claims would have been futile.

Based on the foregoing, Plaintiff has failed to satisfy the IDEA's exhaustion provisions or show his failure to do so should be excused. Given that exhaustion under the IDEA was a jurisdictional prerequisite to filing this lawsuit, the Court lacks subject matter jurisdiction over Plaintiff's claims. *Cudjoe*, 297 F.3d at 1063; *Smith v. Cheyenne Mountain Sch. Dist. 12*, Civ. 15-00881-PAB-CBS, 2017 WL 2791415, at *17 (D. Colo. May 11, 2017) (recommending the dismissal of unexhausted IDEA claims for lack of subject matter jurisdiction), *report and recommendation adopted by* 2017 WL 2778556 (D. Colo. June 26, 2017). Accordingly, the dismissal of this case without prejudice is warranted. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) (dismissal for lack of subject matter jurisdiction should be without prejudice).

## IV. Request to Amend

Finally, in his Response, Plaintiff requests permission to amend his operative complaint "to clarify" both "the substance of his claims" and "the relief being sought." (Resp. 6-8 n.1 & n.2.) However, Plaintiff's request was not made in a separate document, as required by this District's Local Rules. *See* D.C.COLO.LCivR 7.1(d) ("A motion shall not be included in a response or reply to the original motion. A motion shall be filed in a separate document."). Moreover, the Tenth Circuit has repeatedly held "[a] district court may deny leave to amend when 'a plaintiff fails to file a written

motion and instead merely suggests [he] should be allowed to amend if the court concludes [his] pleadings are infirm.'" *Johnson v. Spencer*, 950 F.3d 680, 721 (10th Cir. 2020) (quoting *Warnick v. Cooley*, 895 F.3d 746, 755 (10th Cir. 2018)) (alterations and internal quotation marks omitted). Further, Plaintiff fails to provide the Court with "the specific factual allegations" he would allege in an amended pleading. *See Carroll*, 805 F.3d at 1231 (affirming the denial of a request to amend on that basis); *see also Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty., Colo.*, 771 F.3d 697, 700-01 (10th Cir. 2014) ("[A] bare request to amend in response to a motion to dismiss is insufficient to place the court and opposing parties on notice of the plaintiff's request to amend and the particular grounds upon which such a request would be based."). For those reasons, Plaintiff's request to amend should be denied.

**WHEREFORE**, for the foregoing reasons, this Court **RECOMMENDS** that "Defendant's Fed. R. Civ. P. 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction" (Doc. No. 21) be **GRANTED**. It is further **RECOMMENDED** that this case be **DISMISSED without prejudice**, under Rule 12(b)(1), for lack of subject matter jurisdiction.

**ADVISEMENT TO THE PARTIES**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583

(10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but*

22

*see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule

does not apply when the interests of justice require review).

Dated: February 28th, 2022.

BY THE COURT:

S. Kato Crews
United States Magistrate Judge

23